CARROLL GRAVES v. HARTFORD ACCIDENT & INDEMNITY COMPANY.

No. 7856.   Decided April 15, 1942.
(161 S. W., 2d Series, 464.)

*Scarborough, Yates & Scarborough,* of Abilene, for plaintiff in error.

The jury having found that plaintiff was induced by the false statement of the doctor to make the compromise settlement, it was immaterial whether the doctor knew that a settlement was contemplated and it was error for the Court of Civil Appeals to hold to the contrary. Cowan v. El Paso Elec. Ry. Co., 271 S. W. 79; Wichita Falls & Okla. Ry. Co. v. Pepper, 135 Texas 360, 135 S. W. (2d) 79; Kellum v. Smith, 18 Texas 836, 838.

*Cantey, Hanger, McMahon, McKnight & Johnson,* and *James C. Wilson, Jr.,* all of Fort Worth, for defendant in error.

The compromise agreement should not have been set aside. Texas Emp. Ins. Assn. v. Watkins, 90 S. W. (2d) 622; Goodwin v. Texas Emp. Ins. Assn., 73 S. W. (2d) 660; Wilson v. Jones, 45 S. W. (2d) 572.

MR. JUDGE TAYLOR delivered the opinion for the Commission of Appeals, Section B.

On January 16, 1938, Carroll Graves was an employee of West Texas Cotton Oil Company in the capacity of a mill hand. He had worked for the company at different intervals subsequent to June, 1935, when he graduated from high school. Hartford Accident & Indemnity Company was the compensation insurance carrier for the cotton oil company

and Dr. J. Frank Clark was the indemnity company's doctor, who passed on the physical fitness of the prospective employees of the cotton oil company before they began work and gave them as evidence of fitness a slip showing they had passed the necessary physical examination. From the facts stated most strongly in support of the findings upon which the trial court's judgment was based, it appears that Carroll had had, and passed, at least two examinations of the kind referred to before receiving his injury; that he had played on the high school football team and had never received an injury of any kind; that the cotton oil company did not run all the year, but only during the season of its work each year. He testified that he began working the last time in the fall of 1937, and was injured on January 16, 1938, while assisting in lifting a heavy object; that at the time of his injury he felt a sharp pain in his hips and in the lower part of his back; that he finished his shift that afternoon but really did not do any work after his injury and went home about 4:00 o'clock thinking he would soon get all right; that he did light work the next day and for a few days thereafter but that the pain becoming more severe he reported his injury to the superintendent of the cotton oil company. The superintendent sent him to Roy Sanders, who was the company's safety man; that Roy went with him to see Dr. Clark; that he told Dr. Clark how he was injured and that it had continued to hurt him; that Dr. Clark examined his back, said it was a slight strain, taped him up with adhesive tape and told him he would be all right in a few days; that on the second day thereafter he went back to light work but his back continued to pain him; that he again reported to the superintendent, who again sent him to the safety man and again went with him to Dr. Clark; that this was about 10 days after he saw Dr. Clark the first time; that he told the doctor he had been doing light work and that his back continued to hurt him; that on this occasion Dr. Clark took X-ray pictures of his back; that the doctor still said it was not anything serious and would get all right in a few days; that he went to see Roy a day or two after the X-ray was made and inquired whether it showed anything wrong with his back; that Roy told him he had received information from Dr. Clark that "there was nothing abnormal and no sign of an injury"; that he told Roy he wanted something done, and Roy suggested it was just a muscle strain and that he might see a chiropractor, which he did; that a few days later the superintendent of the cotton oil company sent for him to come to the office and that there he met someone connected with the

Murrell Claim Service who told him he was representing the indemnity company; that the representative had a form of release with him and offered him a compromise settlement which he made and signed on February 16, 1938, for the sum of $10.00. In connection with the settlement agreement a letter from Dr. Clark to the Murrell Claim Service was shown him, dated February 15, 1938 (the day before the settlement), which reads:

"This man reported to me on January 26, 1938, complaining of a pain in his back and stating that he had strained his back while working. X-rays were made and no evidence of injury to his back was found. There was no accompanying redness or swelling at the site of the pain. The back was immobilized with adhesive and he returned to work on January 28, 1938. Diagnosis: slight strain on the back with no disability whatsoever."

Carroll in connection with the compromise agreement made an affidavit (same date) stating, among other things, that he was not relying on "any statement, promises, or representations made by any doctor, lawyer, agent or any other person whomsoever, for or on behalf of "his employer or the company" neither as to the nature, probable extent and duration, or kind of injury that he has, or may hereafter have, nor the legal liability therefor."

Dr. Clark testified among other things as follows:

"* * * I told him on his second visit, that I thought he could go back to work all right, leaving this adhesive on there, which he did. On the 7th of February, when he came into the office and this X-ray was made; later (third visit) he came back up for a slip to go back to work, and I got the picture out and showed it to him. I said, 'Carroll, you are just in a condition that you haven't any business to work down there. It is not safe for you, and not safe for the Company. Therefore, I can't give you permission to go to work. * * * I took the picture, and went over it with him, and explained to him what the condition was, and why I could not give him a clean slip to go to work there."

Later Carroll had Dr. A. V. Cash to take an X-ray of his back. There is evidence that this picture showed a separation of the articular surfaces (laminae) between the fourth and fifth vertabrae, and a bony growth thrown out upon those surfaces. Both Dr. Clark's and Dr. Cash's pictures showed the separation

of the surfaces. Whether the separation was congenital, that is, something Carroll was born with which made a weakness in the back (as Dr. Clark testified) or whether it was caused by fracture when he was lifting the heavy object on the occasion of his injury (as Dr. Cash testified), was a question upon which the doctors differed. At any rate when Carroll presented himself to Dr. Clark as an applicant to return to work after his injury had been sustained he was refused a certificate of physical fitness. Thereafter Carroll, upon allegations made by him as petitioner (presently to be referred to), including an allegation that he had made a compromise settlement upon fraudulent inducements by the indemnity company so to do, filed the suit against the company to set aside the settlement. The company denied petitioner's allegations and affirmatively alleged the compromise settlement, alleged petitioner had received from the company the sum of $10.00 as full compromise settlement, accord and satisfaction of all compensation and claims for compensation which he had or would have had against said company by reason of the injuries received by him.

Petitioner, in addition to alleging that the statement made by Dr. Clark concerning his injury was false, alleged that the *representative of the insurance company who procured his signature to the compromise settlement* knew that the false statement had been made to him by Dr. Clark, and knew that it was a material inducement to the procuring of his signature to the compromise agreement. Petitioner also alleged substantially that at the time of signing the release he believed he had only a minor strain of the muscles of his back, which said belief was occasioned by the information given him by Dr. Clark; that the information was given by Dr. Clark on behalf of the indemnity company; that the *company* knew such misleading information had been furnished petitioner by Dr. Clark and further knew it to be a material inducement to him to sign the compromise settlement.

The cause was submitted to the jury on special issues, the findings in response to which will presently be stated. Motion for judgment non obstante veredicto was filed by respondent which was overruled by the trial court and judgment was entered upon the findings in favor of petitioner. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of the indemnity company. 148

S. W. (2d) 859. Writ of error was granted upon petitioner's application.

All of the findings were in petitioner's favor unless, as stated in the opinion of the Court of Civil Appeals, the finding that Dr. Clark did not know at the time of giving the advice in question that petitioner was contemplating a settlement with the indemnity company, was in respondent's favor. While the finding was favorable to Dr. Clark with *respect to his purpose in making the statement,* it was in no wise inconsistent with, or in conflict with, the findings upon which judgment of cancellation was awarded petitioner. These, briefly, (omitting the finding referred to) are as follows: that petitioner received the injury in question in the course of his employment about January 16, 1938; that between date and February 16, 1938, *Dr. Clark advised petitioner he had only a minor strain to the muscles of his back;* that Dr. Clark was then "the surgeon or doctor for the defendant"; *that the injury received by petitioner to his back was a serious injury;* that the advice given by Dr. Clark was false; that Roy Sanders in stating to petitioner that the X-ray picture "taken by Dr. Clark showed no abnormal condition" was acting as a representative of respondent; that at the time petitioner made the compromise settlement he believed the representation made by Dr. Clark concerning his injury, and that it was a material inducement to him in making the settlement; that the representative of the indemnity company that made the settlement with petitioner knew at the time that the statement had been made to him by Dr. Clark, and knew it was a material inducement to him to make the compromise.

Respondent predicated its motion for judgment notwithstanding the verdict, upon two grounds, the first, that the evidence was undisputed that petitioner relied upon his own doctor's (the chiropractor's) advice concerning his physical condition. We find no evidence tending to show reliance upon the Chiropractor to relieve him from any injury other than the muscular strain such as Dr. Clark had told him he had.

The second ground was that Dr. Clark, inasmuch as he did not know at the time he made the statement in question that petitioner was contemplating a compromise settlement of his claim, could have had no intention to mislead him; and that there could have been no intention upon respondent's part to mislead petitioner through the reiteration of the statement by

its agents, for the reason it was not shown that either Dr. Clark or the agents knew the statement was false. The trial court did not err in denying the motion.

The Court of Civil Appeals recognizes that under the law of this State, as is pointed out in 26 C. J. 1131, sec. 53, it is not an essential element of fraud that the party charged therewith (in this case, respondent) must know of the falsity of the representation in question. See Texas cases cited in support of the statement in section 53.

It has been pointed out that petitioner alleged the use by respondent of the statement in question in making the compromise settlement. It was not essential to petitioner's cause of action, in view of the established holding in this State with respect to fraud, pointed out above, that he establish knowledge on the part of respondent that the injury was a serious one. Facts constituting legal fraud (regardless of the lack of culpable purpose on the part of Dr. Clark) were established. The jury found that the injury was a serious one, that respondent's doctor stated to him it was not serious but only a minor strain; and also that the statement was false. It further found that petitioner relied upon the false statement and was induced thereby to compromise his claim for $10.00, the amount paid the chiropractor to treat a muscle strain. While the jury found that Dr. Clark did not make the statement with knowledge that petitioner was contemplating settlement it further found in effect that *respondent's use of the statement* in procuring the settlement was such as to bring its action within the legal fraud rule. The findings were correctly made the basis of the trial court's judgment of cancellation. Gulf, C. & S. F. Ry. Co. v. Huyett, 49 Texas Civ. App. 395, 108 S. W. 502, (writ refused); St. Louis S. W. Ry. Co. of Texas v. Thomas, 244 S. W. 839; Cowan v. El Paso Elec. Ry. Co. (Com. App.), 271 S. W. 79.

It appears from what has been stated that it is necessary to reverse the judgment of the Court of Civil Appeals, and that the trial court's judgment should be affirmed, unless some reason appears from the other assignments of error in respondent's brief for reversing that judgment also.

The remaining assignments present the complaints respectively that the trial court erred in refusing to submit to the jury (1) whether Dr. Clark knew the true condition of petitioner's back when he talked to him the first time he saw him after

his injury; (2) in rendering judgment setting aside the settlement notwithstanding Dr. Clark did not know at the time he advised petitioner that he was contemplating a compromise settlement with respondent, and (3) in refusing to submit to the jury whether respondent relied upon the representations made by the chiropractor, along with other representations made to him by Dr. Clark.

The complaints are disposed of adversely to respondent's contentions by what has already been stated. The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court April 15, 1942.