### HARRIS et al. v. SANDERSON.
#### No. 2437.

Court of Civil Appeals of Texas. Eastland.
Jan. 28, 1944.

Rehearing Denied Feb. 25, 1944.

Letcher D. King, of Abilene, for appellants.

Scarborough, Yates & Scarborough, of Abilene, for appellee.

FUNDERBURK, Justice.

J. H. Harris, Lillie Harris and Alexander James Gonzales brought this suit against H. E. Sanderson (doing business in the name of Safety Cab Company) to recover damages for the death of Elsa Ray Harris Gonzales. Deceased was riding a bicycle along a highway between Camp Barkeley and the City of Abilene when struck and fatally injured by one of defendant's cabs approaching from behind and driven by an employee. The cause of action alleged by plaintiffs consists of a number of different grounds of recovery, each embracing an alleged negligent act or omission as constituting a proximate cause of the death of said Elsa Ray Harris Gonzales.

In their petition plaintiffs alleged that they had released said cause of action for damages, but further pleaded a cause of action for the cancellation, or avoidance, of such release.

The trial was by jury, but when plaintiffs had rested defendant also rested and filed a motion for an instructed verdict on the ground that plaintiffs had wholly failed to establish any negligence on the part of defendant's cab driver, and for the further reason there had been no showing of actionable fraud on the part of defendant or his agents, and hence the release constituted a bar to the cause of action. In response to this motion, the court rendered judgment for the defendant, from which plaintiffs have appealed.[1]

The alleged errors of the trial court, upon which the appeal is predicated, are set forth in nine points. Points 1 to 6, inclusive, relate to the question of negligence and are immaterial, if Point 7, relating to the question of fraud as avoiding the release of the cause of action should not be sustained. We shall, therefore, give consideration to the seventh and eighth points first. The ninth point is more specifically covered in the other points, and, therefore, requires no separate independent consideration.

Both the seventh and eighth points relate to the cause of action for cancellation of the release. Of these we shall notice the eighth point first. The payment of $260 for the release was made by check payable to the order of plaintiffs and Kiker-Knight Mortuary and Dr. L. J. Picard. After endorsement of the check by all the payees, the money was actually paid over to Kiker-Knight Mortuary and Dr. L. J. Picard. This was done with the consent of plaintiffs, one or more of whom were legally liable to those receiving the money. In our opinion, as a matter of law, the $260 was paid to plaintiffs in the sense here material, that is to say, that its payment, as aforesaid, was a consideration for the release and in equity required to be accounted for.

The seventh point presents a question of considerable difficulty. The point

---

[1] The reason for the requirement of Rule 268. Texas Rules of Civil Procedure, that a motion for directed verdict "shall "state the specific grounds therefor" is defeated where, as here, more than one ground is stated but the order on the motion or the judgment fails to state which ground is sustained. As it is, there is nothing in the record to show whether the court gave judgment on the ground that there was no evidence of defendant's negligence or on the ground that there was no evidence of fraud. If it was the latter, then it is a waste of time and space to discuss the former, since it is rendered wholly immaterial, except upon the contingency that we should conclude that a prima facie case of fraud was established.

is: "The trial court erred in withdrawing the case from the jury and not submitting the same to the jury because the pleadings and the evidence clearly raise the question of actionable fraud on the part of appellee in securing the release and said question and issue should have been submitted to the jury." In the statement of the case we have already said that a cause of action for cancellation, or avoidance, of the release was alleged. A preliminary question is whether the *representation* as an element of the alleged fraud, was a representation of fact, or only the expression of an opinion. In their petition, plaintiffs alleged that "* * * the defendant knew that his representation as to his legal liability based on said facts, and the lawyer's representation based on said facts, were false * * * Defendant knew that such representations made by himself and by the attorney were false and fraudulent * * *." Under these allegations it was immaterial to the statement of a cause of action whether the alleged representation was one of fact or of opinion.

It may be conceded that there was evidence sufficient to raise issues of fact upon each and all the elements of actionable fraud as pleaded, unless it was (1) that the representation was one of fact upon which plaintiffs had the right to rely in contradistinction to one of mere opinion upon which they had no right to rely, and (2) that defendant and/or his said attorney knew that the representation (whether one of fact or opinion) was false.

In our opinion, there was no evidence to raise an issue upon the alleged fact that the defendant and/or his attorney knew that the representation was false and was, therefore, made with fraudulent intent. As we understand there is no contention that such was the case. The inquiry is, therefore, narrowed to a consideration of whether the representation was one of fact or of mere opinion, and the legal effect of its being the one or the other.

All the testimony regarding the representation was given by the three plaintiffs.

J. H. Harris testified to the effect that the defendant Sanderson, accompanied by another man, who Sanderson said was his lawyer, stated to plaintiffs that they did not owe anything—were not obligated at all, but to prevent hard feelings were willing to pay the "sanitarium, cemetery and doctor bill;" that they had talked the matter over with witnesses and with one another and decided, as far as they were concerned, they were not "obligated anything to us at all"—"didn't owe nothing."

Mrs. J. H. Harris testified in effect that Mr. Bob Sanderson and a man he brought with him came into the room where all the plaintiffs were present and "introduced himself to us and also turned and introduced us to the other fellow and said that was his lawyer"; and that then Sanderson "told us what he would do; that he would cover all of the expenses, including the hospital bill, doctor bill and the funeral home services and also the cemetery, digging of the grave and spot for the grave." Asked, "What did the lawyer say, if anything?", she said Sanderson turned to him and said: " 'I have told them the truth' ", and he said " 'Yes, sir', and that he was experienced on it and that he [Sanderson] had told us the truth", and added: " 'I think it is mighty nice in Mr. Sanders [Sanderson] giving this to you as a gift.' " Asked what "did Mr. Sanderson say he had done?" she answered: "He said he had talked to the witnesses and also visited the scene of the accident * * * [and] he said he didn't owe us anything by law." She testified that neither Sanderson nor the lawyer told them any of the details or what they found as a result of talking to the witnesses and investigating the accident at the scene.

A. J. Gonzales testified to the effect that Sanderson with a man, who Sanderson said was a lawyer, came to the Harris place and said he came over there to discuss the accident with plaintiffs; that Sanderson said: "He was sorry about the accident, but to keep hard feelings down he would pay the hospital bill, the doctor bill, funeral expenses, and pay the grave digger." Asked, "Did he make any statement in regard to his liability about owing you all anything?" he answered, "Well, he said he didn't owe us anything * * * but to keep down hard feelings he was willing to pay" the things above enumerated, and in addition a cemetery lot. Questioned whether Sanderson asked the lawyer anything, he answered: "He asked the lawyer if he was right about that—he said: 'I don't owe these people anything?' and he said, 'No', * * that he thought Mr. Sanderson had been very kind to us." That the lawyer said: " 'As a matter of law' he said 'he didn't owe us a dern thing'." That both Sanderson and the lawyer said that. Asked again what the lawyer said at the conference, he

answered: "He [Sanderson] said [to the lawyer] was he right under the law that he didn't owe us a cent?, he said that he was right * * * that Mr. Sanderson was being very nice to us by letting us have that money."

"Q. The other man with Mr. Sanderson being a lawyer, you believed he was telling you what the law really was in regard to it? A. Yes, Sir. * * * I felt like he owed me some to begin with, but after the lawyer explained it to me I didn't.

"Q. What explaining did he do? A. He said under the law he didn't owe us anything.

"Q. Did he tell you why? A. No, he didn't.

"Q. Did you ask why? A. No, I didn't.

"Q. Did Mr. and Mrs. Harris ask why? A. No, they didn't * * * the only thing they said was according to the law that they didn't owe me a cent."

■ It is believed that the foregoing is substantially all the evidence showing the nature of the representation in question and upon which the existence of any cause of action for the cancellation or avoidance of the release depends. Stated briefly, according to the evidence Sanderson, backed up by his attorney, represented that defendant was not liable to plaintiff for any damages resulting in the death of Elsa Ray Harris Gonzales. However positively asserted, it was, in our opinion, necessarily the statement of an opinion or belief.

The question posed may be stated thus: may the assertion of an opinion by a defendant to a plaintiff that he is not liable for damages growing out of a particular transaction, absent the assertion of any of the facts of such transaction, and absent any evidence to show that such opinion was not held in good faith, sufficient, in connection with other essential elements of fraud, to constitute actionable fraud?

■ In Hartford Accident, etc., Co. v. Graves, Tex.Civ.App., 148 S.W.2d 859, 860, after careful consideration based upon authorities therein quoted we undertook to list numerically all of the fact elements of actionable fraud based upon representations of fact, the first being a *representation* and the fifth an *intention* that the representation should be acted upon, or, as otherwise variously stated, " 'that the representation was made with intent * * * to induce the plaintiff to do or refrain from doing some act' ", or " 'that it [the representation] was made * * * for the purpose of inducing the other party to act upon it.' " It was the latter element, construed to have been found in favor of the defendant, which was deemed controlling in that case. The Supreme Court reversed our decision. Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464. That action naturally suggests the inquiry: whether it was the view of the Supreme Court that such was not one of the necessary elements of actionable fraud. But we do not think the opinion can reasonably be interpreted as so holding. Rather it seems the Supreme Court disagreed with our conclusion that the issue submitted and found in favor of "Clark" involved the element of intention or purpose, by the representation, to induce the other party to act. In that case the representation was treated by this court and the Supreme Court as being a representation of fact, and not an expression of opinion, and hence, the Supreme Court's decision is not controlling authority upon the question in this case involving, as we hold, only an opinion. The Supreme Court's opinion has been mentioned only for the purpose of showing that our enumeration of the elements of actionable fraud as set out in our opinion in said case may be accepted as a premise upon which the discussion herein proceeds.

■ The black letter text of C.J.S. says: "According to the weight of authority, the state of mind of a person making a representation is an existing fact, susceptible of actionable misrepresentation; so, redress may be had for the dishonest expression of an opinion contrary to that really entertained by the speaker, or for an unfulfilled promise to perform in the future made with the undisclosed intention not to perform, or without the intention to perform, and for the purpose of inducing action." 37 C.J.S., Fraud, p. 237, § 12.[2]

---

[2] This admirable statement is, it seems to us, subject to one criticism. The clause: "and for the purpose of inducing action" is superfluous and, in implication, misleading. Intention or purpose to induce action is an element of any actionable fraud based upon representations. It is not peculiar to fraud consisting of false opinions or false promises, as, for example, that one expressing an opinion knew it was incorrect, or one making a promise to be performed in the future intended not to perform, or was without intention to perform. Of course, the eminent text writers did

■ Another statement of the rule by the same authority is: "Thus redress may be had for the dishonest expression of an opinion or belief contrary to that really entertained by the speaker," id. The one Texas case cited to this part of the text is Texas Farm Bureau Cotton Ass'n v. Craddock, 285 S.W. 949, 950, writ of error refused, from which we quote as follows:

"We think it is plain from the testimony referred to that the statement on which the jury predicated their finding in form was no more than an expression of the agent's opinion as to what would be the expense of handling the cotton; for an assertion that a thing will happen in the future necessarily is always a statement of an opinion and is never a statement of a fact. * * *

"However, fraud may be predicated on a statement which purports to be only the expression of an opinion entertained, if the person expressing the opinion in reality does not entertain it, but falsely pretends *he does for the purpose of deceiving another person.*" (Italics ours.)

It was deemed a complete answer to the contention of the plaintiff in that case to say: "That the agent honestly entertained the opinion he expressed", which, of course, would be presumed in the absence of any evidence to the contrary. Quoting further from C.J.S.: "An honest but erroneous expression of opinion or belief is not fraud, and this applies to an expert's expression of opinion or belief. Since a statement concerning a matter not susceptible of exact knowledge by the speaker is no more than the expression of a blief, one making such a statement *in good faith* is not liable for its falsity." (Italics ours.) 37 C.J.S., Fraud, p. 265, § 24. The Texas case of Wilson v. Jones, Tex.Com.App., 45 S.W. 2d 572, 574, is cited to the text, and from it we quote as follows:

"To be actionable, a false representation must be one of fact, as distinguished from an expression of opinion which ordinarily is not presumed to deceive or mislead, or to influence the judgment of the hearer, and upon which he has no right to rely. * * *

"[However] The testimony brings him under *another well-settled rule, which is more exacting,* that an expert's opinion as to a matter susceptible of knowledge is

regarded as a statement of fact, upon which reliance may properly be placed, and, *if it is made scienter, that is, either with knowledge of their falsity or in culpable ignorance of their truth, constitutes remediable fraud.*" (Italics ours.)

Black on Rescission and Cancellation says: "But the case is different with regard to a false opinion fraudulently expressed. This is actual fraud justifying rescission or relief in equity. That is to say, if a person makes a statement for the fraudulent purpose of deceiving another and thereby inducing him to enter into a contract or assume an obligation, it is a fraudulent misrepresentation warranting relief to the party defrauded, although the statement relates to that which is properly matter of opinion rather than matter of fact, or although the person expressing it puts it forward as his opinion, if he *knows it to be false or 'does not believe it to be true, or if he does not in reality hold any such opinion or holds a contrary opinion.*" (Italics ours.) 1 Black on Rescission and Cancellation, p. 193, sec. 78. One of the cases cited is Houston v. Darnell Lumber Co., Tex.Civ.App., 146 S.W. 1061, 1062, writ refused, wherein in answer to a contention that the representation involved was a statement of only an opinion, it was said that "nevertheless, if the same were false, we think they constituted a sufficient predicate for the judgment if Houston knew them to be false and if he made them with the *fraudulent intent* to deceive Darnell * * *." (Italics ours.)

In Quebe v. Gulf, C. & S. F. Ry. Co., 98 Tex. 6, 81 S.W. 20, 22, 66 L.R.A. 734, 1 Ann.Cas. 545, the doctor told the plaintiff that his injuries (the only injuries known at the time being to his throat and breast), were trifling, held: "Upon the subject of fraud there was nothing to submit, had there been a request for a submission of that question. The statement made by the surgeon as to the character of plaintiff's injuries was only his medical opinion *which accorded with all that was known or believed * * *.*" (Italics ours.)

■ There are many decisions in this state in which it was recognized that to render the expression of an opinion an element of actionable fraud there must exist

---

not intend to imply that in the black letter text all the elements of actionable fraud were set forth. If so, such an opinion or promise would be actionable, even if not believed, or if there was no right to rely on same, or even if there was no proximate injury. It is manifestly simply a case of stating only one of several elements, additional to the particular one constituting the subject of discussion.

the fact of bad faith. Only a few may be listed as follows: Bank of Washington v. San Benito & R. G. V. Ry. Co., Tex.Civ.App., 293 S.W. 599; Towns v. Traders & General Ins. Co., Tex.Civ.App., 107 S.W. 2d 460; O'Brien v. Von Lienen, Tex.Civ.App., 149 S.W. 723; Means v. Limpia Royalties, Tex.Civ.App., 88 S.W.2d 1080; J. S. Curtiss & Co., Inc. v. White, Tex.Civ.App., 90 S.W.2d 1095; Traders & General Ins. Co. v. Cole, Tex.Civ.App., 108 S.W.2d 864; Lipscomb v. Houston Electric Co., Tex.Civ.App., 149 S.W.2d 1042; Bankers' Health & Accident Co. of America v. Shadden, Tex.Civ.App., 15 S.W.2d 704; Northwestern Life Ass'n v. Findley, 29 Tex.Civ.App. 494, 68 S.W. 695; Northwestern Nat. Life Ins. Co. v. Blasingame, 38 Tex.Civ.App. 402, 85 S.W. 819.

Some cases may be found which without discussion of any distinction applied the rule relating to representations of fact, but wherein it appears it could have been reasonably contended that the representation was a matter of opinion. Of these in addition to Graves v. Hartford Accident, etc., Co., supra, 138 Tex. 589, 161 S.W.2d 464, may be mentioned Cowan v. El Paso Electric R. Co., Tex.Com.App., 271 S.W. 79; Gulf States Security Life Ins. Co. v. Edwards, Tex.Civ.App., 109 S.W.2d 1125. Of course these decisions are of little aid here.

The case of United States Pipe & Foundry Co. v. City of Waco, 130 Tex. 126, 108 S.W.2d 432, is not authority, since the representation there involved was held to be a warranty. Of course, in a question of warranty the point now under consideration is immaterial.

One of the cases relied upon by appellee is Safety Casualty Co. v. McGee, 133 Tex. 233, 127 S.W.2d 176, 178, 121 A.L.R. 1263. The representation is that case was recognized as an opinion. After reaffirming the general rule, a number of exceptions were noted, including one or two of them expressed as follows: "But it is equally well settled that misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood. *Likewise, redress may be had if one party possessed superior knowledge and took advantage of the other party's ignorance of the law to mislead him by studied concealment or by misrepresentation,* and this is especially true where confidential relations obtained." (Italics ours.) Was this an ex-

press recognition by the court of exceptions applicable to *good faith* expressions of opinions? We think not; but if so, it is clearly dicta, because it is noted in the opinion that the jury found "that the representation made by Dr. Mann was *knowingly false.*" (Italics ours.) The opinion quotes from Towns v. Traders & General Ins. Co., supra, as follows: " 'but where one party, who possesses superior knowledge as to the law, takes advantage of the other party's ignorance and *intentionally makes a misrepresentation* * * * for the purpose of deceiving the other party and actually succeeds in that respect, he may be held responsible for his conduct." (Italics ours.) Apparently this was not quoted to criticize, disapprove or distinguish that case. Hence, upon the whole, since the case was one involving the representation of a false opinion, in that it was known to be false when made, we think the decision should not be regarded as controlling authority upon the question here.

We recognize that this opinion is extending to a regrettable length. We could have simply cited Moore v. Moore, Tex. Civ.App., 259 S.W. 322, as a case deciding that an assertion by a lawyer as to·the result of a lawsuit not then filed was not a false representation constituting an essential element of actionable fraud, but manifestly that course in the present state of the decisions, would have ill served the purpose of the requirement that we give written opinions.

That an interpretation of law be in accord with the reason of the law and with the other laws and recognized principles not intended to be repudiated, should ever be kept in mind. It is the general rule that a mutual mistake of law will not furnish grounds for avoiding a contract. The rule, however, is not so familiar that the release of a cause of action will not be set aside on the ground of mutual mistake as to the extent of injuries. Houston & T. C. Ry. Co. v. McCarty, 94 Tex. 298, 60 S.W. 429, 52 L.R.A. 293, 86 Am.St.Rep. 835. Such interpretation of law was ·no doubt ruled by consideration of the evident truth that any other interpretation would militate against voluntary settlements. What, other than a mutual mistake in essential nature, would be involved when a doctor or lawyer expresses an honest, good-faith opinion and same is believed by the other party and the cause of action released? It should be the policy of the law

to encourage compromise settlements. If the representation involved in this case, being the expression of an opinion involved in a disclaimer of liability made in good faith, or, in other words, made in the honest belief of its correctness may constitute an essential element of a ground for avoiding the release by merely establishing the incorrectness of the opinion, then compromise settlements can rarely be made invulnerable to successful attack. What reason, except that he was not legally liable could Sanderson have given plaintiffs for offering only $260 for a release of all the damages resulting to a husband and parents from the death of a young wife and daughter? The mere making of such an offer would seem to imply a negation of liability. If in similar cases one cannot ex press the opinion that he is not legally liable, he is practically denied the right to negotiate a compromise.

In our opinion, it is a far sounder interpretation of the law that representations constituting only the expression of opinion is an apparent exception to the rule, just like a promise to be performed in the future. The latter becomes within the meaning and reason of the law, a false representation when made with intention not to perform, or without intention to perform, while the former becomes, within such meaning and reason, a false representation when not made in entire good faith,—the good faith, of course, being presumed in the absence of evidence to the contrary. The minority rule in this State that scienter, or knowledge of falsity of a representation, is not an essential element of fraud, is applicable to a representation of a pre-existing or past fact and has no application to a representation constituting only the expression of an opinion any more so than it has application to a false promise. Knowledge of the falsity of an opinion or promise is not one of the generally enumerated elements of actionable fraud. But it is an element or quality attached to an expressed opinion or promise necessary to convert the opinion or promise into a representation.

It follows from our conclusions as above stated, in our opinion, the court did not err in rendering judgment for the defendant, that the judgment should be affirmed, and it is accordingly so ordered.