**BROS INCORPORATED**

v.

**W. E. GRACE MANUFACTURING COMPANY and William E. Grace.**

**Civ. No. 7608.**

United States District Court
N. D. Texas,
Dallas Division.

Jan. 10, 1964.

Schley & Schley, by Joseph Schley, Dallas, Tex., Carlsen, Carlsen & Sturm, Andrew E. Carlsen, Minneapolis, Minn., for plaintiff.

Howard E. Moore, Dallas, Tex., Channing L. Richards, Charlotte, N. C., for defendants.

DAVIDSON, District Judge.

The case before us involves the validity of a patent and the charge of infringement and possible damage.

This litigation is now entering its tenth year and yet nowhere during that period has it been allowed to sleep. It has come within the compass of three circuit courts of the United States and drawn counsel out of the fourth.

The plaintiff, Bros Incorporated, is and has been for many years manufacturers of road machinery and so has the defendant, W. E. Grace Manufacturing Company. Each of these companies has established branch offices or subsidiary companies in various states of the Union. This suit was begun in the State of Ohio by Bros Incorporated suing one of the agencies of the defendant Grace Manufacturing Company with charge of infringing its patent, the case being styled Gibson-Stewart Co. v. Wm. Bros Boiler Mfg. Co., 6 Cir., 264 F.2d 776.

The Grace Manufacturing Company notified its agency that it would stand between it and all liability and undertook the defense of the case. Judgment was rendered in favor of the patentee and affirmed by the Sixth Circuit Court and writ of certiorari denied.

While the matter was yet pending in the Appellate Courts of Ohio and the Supreme Court, the patentee filed suit also in the Northern District of Texas at Dallas, within the Fifth Circuit, and asked for summary judgment in the case based on the certified copy of the Ohio record. The matter was heard before Judge William Hawley Atwell, Bros, Inc. v. W. E. Grace, Mfg. Co., D.C.Tex., 158 F.Supp. 786.

The case was appealed to the Fifth Circuit Court and affirmed as to the validity of the patent and the infringement. Judge Atwell had, however, in his opinion and judgment omitted any finding or award on the question of damage for infringement. The Circuit Court then referred this question back to the trial court at Dallas.

The matter was handled by Judge Atwell's successor, Judge Thomas Whitfield Davidson. The only matter so referred was for the Court to determine the amount of damages incident to the infringement. This was referred to a master who in course of time made his report and findings and judgment was rendered thereon.

The Court received the master's report and the contest thereon and made some modification of the master's findings which the patentee appealed from. At the hearing of this matter, so referred back to the trial court, the defendant came forward with a motion to reopen the entire litigation and set up as ground therefor that the patent itself was invalid by reason of a brochure being exhibited at a road show in Chicago something more than a year before the patent application was filed. This same motion, however, it appeared was made in the Ohio court and the Ohio Court was asked to return its mandate and modify its judgment which it refused to do.

In line then with the action of the Ohio Court and the action of the Sixth Circuit, the motion of the defendant Grace to reopen the controversy in this court was denied. On this point the defendant filed a counter-appeal. The Fifth Circuit Court heard this cross appeal and sustained the motion holding that the trial court should have entertained it at the time it was presented.

In the meanwhile counsel for the defendant, representing another company having a line of business similar to that of the defendant Grace, filed suit for declaratory judgment in Minneapolis, Minnesota, in the home town and district of the plaintiff Bros. The case was heard at length, much evidence introduced, and a Minneapolis court under Judge Nordbye sustained the position of the defendant Grace and held the patent invalid. Bros, Inc. v. Browning Mfg. Co. & Shovel Supply Co., 8 Cir., 1963, 317 F.2d 413.

While this court is not bound by that decision, since the Grace Manufacturing Company was not a party to the Minneapolis case, yet the decision is persuasive on the point.

To recap briefly, the many proceedings accompanying this case can be summarized as follows.

In the Ohio litigation:

June 24, 1954   Bros v. Gibson-Stewart (Grace) Filed.

Nov. 26, 1957   Judge Jones holds Bros patent valid and infringed.

Dec. 16, 1957   Judgment entered for Bros.

Feb. 19, 1959   On Def. appeal to C.A. 6 Judgment Affirmed.

June 29, 1959   Def. Petition for Certiorari Denied.

July 30, 1959   Def. Motion to Stay Mandate (C.A.) Denied.

July 30, 1959   Def. Motion to Modify Mandate (C.A.) Denied.

Oct. 1, 1959   Def. Petition to Recall and Modify Mandate (C.A.) Denied.

Nov. 13, 1959   Def. Request for Reconsideration of Petition to Recall and Modify Mandate Denied.

Nov. 16, 1959   Def. Request in District Court for Stay of accounting filed Aug. 29, 1959, and Request for hearing in District Court filed October 8, 1959 both Denied.

Nov. 17, 1959   Master appointed by Judge Jones.

Dec. 16, 1959   First hearing before Special Master in Cleveland, Ohio.

————————

The subject Texas litigation file records the following events:

Dec. 26, 1957   Complaint Bros v. Grace Filed.

Jan. 31, 1958   Bros Motion for Summary Judgment Granted.

Nov. 26, 1958   Def. Appeal from Summary Judgment Affirmed.

Nov. 26, 1958   Court of Appeals modifies Judgment and Accounting Ordered.

————————

Added to these should be the hearings had in Minnesota:

Bros, Inc. v. Browning Mfg. Co. & Shovel Supply Co., 8 Cir., 1963, 317 F.2d 413, aff'g D.C.Minn.

As Judge Brown stated, Bros, Inc. v. W. E. Grace Mfg. Co., 5 Cir., 320 F.2d 594, 606:

"Like Mordecai at the Gate, the peculiar nature of the judgment entered by the Texas Federal Court must constantly be kept in view. That Court is not altogether as free as it might be (nor are we) had the judgment been rendered on the intrinsic merits. On principles of res judicata, it accepted, as it was bound to do, the adjudication of the Ohio court for the very same cause of action between the same parties. * * *"

And further that:

" * * * (T)he mere fact that through the operation of res judicata a judgment has been entered based upon an earlier judgment does not alter the availability of relief if —and the if may be a big one—(a) parties are available and (b) controlling equitable principles are satisfied by the facts. * * *"

The action of the Fifth Circuit in referring this case back to the trial court and reversing the action of the trial court

touching defendant's motion to reopen the case now places before this Court two questions:

(1) Was the brochure exhibited at the road show of such a character as to invalidate the patent which was not applied for more than a year thereafter, and

■ (2) Has this newly discovered evidence and the contention of the parties with reference thereto been of such a nature as to create equitable grounds whereby the Court is warranted in going into the facts for the purpose of determining such question.

At this stage it might be well to describe the brochure that was filed and exhibited in the Chicago road show in July 1948. A copy of such brochure is now made a part of this opinion and marked as an exhibit thereto. In the trial of the case it was referred to as defendant's exhibit R3.

In referring the case back to the trial court the Fifth Circuit in its opinion rendered July 3, 1963, stated the case in part as follows:

"Severely capsulated, the basis for the extraordinary motion seeking relief from the judgment sustaining validity and infringement is this. On the eve of the issuance of the mandate by the 6th Circuit, the Infringer discovered through its new (and present) counsel that a printed brochure depicting the machine, describing it rather fully and indicating a specific sales price was publicly distributed at the 'Road Show' of the American Road Builders Association held at Chicago in July 1948. If publication were established, it could, or at least might, be decisive, especially in light of the admitted display of the machine itself on the show grounds. Dates are of critical importance since with the patent application being filed November 17, 1949, no patent could validly issue if in fact 'the invention was * * * described in a printed publication in this * * * country or in public use or on sale in this country, more than one year prior to the date of the application * *.' 35 USCA § 102(b). In other words, if the time was fixed at July 1948 and in a substantive sense it was judicially determined that 'the invention was * * * described in (the) publication * * *,' the patent, no matter how meritorious intrinsically, would be invalid because of a positive statutory infirmity.

* * * * * *

"By whatever name finally called, it is evident that the Infringer seeks equitable relief. What relief, where and how obtained, its extent and nature, must of necessity be determined by the particular facts. They will illumine what is otherwise a dark and tortuous path."

The motion filed in the trial court at Dallas to reopen the case on the basis of newly discovered evidence nominally embraces much of the provisions of Rule 60(b) with emphasis on Section (6) as follows:

Rule 60. "Relief from Judgment or Order

"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence: Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * * (6) any other reason justifying relief from the operation of the judgment. * * * *"

Under the provisions of Rule 60, particularly Section (6) of Rule 60(b), we think in its broad scope it is applicable to the controversy now before us.

And that brings us to the contention of the defendant, Grace Manufacturing Company, the infringer in the case now on hearing, of what happened in its effort to establish the newly discovered evidence touching the origin and existence of the brochure marked as defendant's exhibit R3 hereinabove referred to. According to the defendant, evidence produced in court, the patentee denied any knowledge of the existence of said brochure, defendant's exhibit R3, being present in the road show. At a later time Mr. Williamson, who was often the spokesman for the plaintiff Bros Incorporated, stated that if it was out it was published a long time after the road show. When the hearing occurred in Ohio, on the motion of the same defendant to recall that case and reopen it to permit the evidence, an affidavit was filed by Mr. Williamson in which he denied that the particular document or brochure was exhibited and denied knowledge of it,

but indicated that of what he did know it did take place a long time after the road show. Upon this evidence the Ohio court refused to reopen the case.

On the question of whether there are equitable grounds to reopen the case, the evidence, both direct and circumstantial, is ample. The plaintiff Bros Incorporated was engaged in the manufacture of road machinery. The United States Government was asking for bids on road compactors of the character of the machines under consideration. A number of bids were filed with the government, both by the plaintiff Bros and by the defendant Grace. In the various amendments that were made pending the consideration of the patent prior to the granting thereof, the witness Mr. Archie Williamson, who manifestly knew more about the mechanical side of his company than most any of the other parties, was named as one of the patentees. He was seemingly regarded as an authority on construction of this type. He wrote articles for different magazines on the subject. He was manifestly very much interested both as a matter of mechanical, scientific construction as well as his pecuniary interest.

When he was called upon under order of court to give his information about the exhibition or existence of such document he was unable to give any information but at one time denied its existence. What would be the attitude of the average individual, when a thing that had been more or less his hobby and his business and upon which he had no doubt contributed to the exhibitions at the road show, when asked in future years about it, some five or six years later, would his memory be blank or would he remember the circumstances? And in this same line of consideration we are often called upon to refresh our memory. When this exhibit R3 was first presented to him as an exhibit that his company made at the road show, normally would it not have refreshed his memory and he would have known about its having been there?

We conclude both from the direct testimony and from the circumstances surrounding it that he must have known about the paper. Did he fraudulently hide it or did his memory serve him badly when he affirmatively denied its existence? The denial of its existence was a material matter, because when the matter was before the Ohio Court had he admitted that it was exhibited a year before the patent was applied for, his patent would be invalidated. Therefore he was materially interested in the effect of his testimony.

And further, it is our view that the maker's knowledge of the falsity of a material misrepresentation of fact is not a necessary element of fraud. Mitchell v. Zimmerman, 4 Tex. 75; Henderson v. San Antonio & M. G. R., 17 Tex. 560; Graves v. Hartford Acc. & Indem. Co., 138 Tex. 589, 161 S.W.2d 464; O'Quinn v. Texas Employers Ins. Ass'n, Tex.Civ.App., 219 S.W.2d 119, reh. den. err. ref. n. r. e.; Baker v. Moody, 5 Cir., 219 F.2d 368. Plaintiff, through Mr. Williamson, cannot shield itself by ignorance or innocent misapprehension of the true state of material facts. There has been no lack of diligence by defendant. From the outset of this protracted litigation, defendant relied on the vitally necessary and liberal discovery procedures afforded by the Federal Rules. Actions chargeable to plaintiff have thwarted full disclosure of the facts. As a result, a good defense, the defense of prior publication, was previously lost. Equity and good conscience cannot sanction such an abuse of the spirit of the Federal Rules.

It is our conclusion therefore that the grounds are adequate and the evidence sufficient to justify a reopening of the case and passing upon the effect of the exhibition of the brochure at the road show.

The United States statute dealing with patents provides in effect as follows:

35 U.S.C.A. § 102 "Conditions for patentability; novelty and loss of right to patent

"A person shall be entitled to a patent unless—

\*　\*　\*　\*　\*　\*

"(b) (T)he invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * * "

Thus it was material to the validity of the patent that it was not exhibited to the public in printing or published form more than one year prior to the date of the application for patent. Almost the entire uncontroverted evidence now establishes the fact that the road show took place in July 1948 and the patent application was filed in November 1949.

Since there were several competitors in the field for the building of these road compactors the question may be well asked, why were the other competitors operating without patents. The probable answer thereto and the one given by the defendant Grace was that none of the competitors regarded the elements and finished product of a road compactor as embracing new discovery patentable under the law and none of them had therefore asked for patents.

Describing a little more in detail the nature of the patent in controversy as indicated by the picture of the brochure, the machine is built upon and around four large pneumatic tires. These were made to range side by side so near each other that they would pack and smooth the road as they were carried over it. The large body or box over the wheels was to hold ballast such as rock or bags of sand so as to add to the weight and therefore pack the ground harder. It is a matter of more or less common knowledge in road construction and dirt moving equipment that until about the time in controversy when new dumps for road or other purposes were built of earth it was necessary to give them some time to settle. These compactors obviated that delay and the earth was immediately made firm by the use of them.

The particular compactor was described as an oscillating machine. Two wheels on one side of the center were made to oscillate if need be with the wheels on the other side. Thus if one of the wheels on the right ran over a bump or high place it would so oscillate that it would not affect the other three wheels which would go ahead with the packing. And when this was not the case, as in the case with the old steam roller or heavy solid iron wheel, when it ran over a high place at one end it tended to dig a hole at the other which these oscillating machines would not do.

The defendant insists in its evidence and argument that the oscillating feature has been known to the trade and to the business for a number of years and was not an element subject to new discovery or patent.

In the present hearing some five or six witnesses connected with the manufacture of road machinery took the witness stand and testified after an examination of the brochure that they could take the same and manufacture the identical road machine now in question, the one that the plaintiff claims to be infringed.

In the hearing at Minneapolis before Judge Nordbye the same question was presented and similar testimony offered with the result above announced to the effect that the particular document or brochure that was exhibited at the road show in 1948 was on exhibition at the road show and seen by the several witnesses and they and others to whom it had been previously exhibited testified that they could take the paper and manufacture the road machine.

It is the opinion of the Court that this case is properly reopened and after full consideration of the evidence it is so adjudged and upon further consideration of the evidence with reference to the period of time that elapsed between the publication of the brochure at the Chicago road show in 1948 and the patent application in 1949 that the patent is under the mandatory provisions of the statute rendered invalid.

Judgment will be entered in favor of the defendant Grace Manufacturing Company.