**AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**James B. MOSELEY, Appellee.**

**No. 13–97–180–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 20, 1998.

John A. Smith, III, Dunn & Weathered, Corpus Christi, for Appellant.

Peter Steiner, Markey & Steiner, Corpus Christi, for Appellee.

Before DORSEY, HINOJOSA and RODRIGUEZ, JJ.

## OPINION

HINOJOSA, Justice.

This is an appeal from the trial court's decision to set aside a worker's compensation compromise settlement agreement ("CSA"). By twelve points of error the worker's compensation carrier, Aetna Casualty & Surety Company, challenges the legal and factual sufficiency of the evidence supporting the trial court's findings of fact. By two additional points, Aetna contends the trial court erred in failing to find that appellee, James B. Moseley, should return benefits received under the CSA. We affirm.

Moseley was employed by Hall Real Estate Company to perform maintenance duties at the Beechtree Apartments in Corpus Christi. On November 2, 1989, as he was admonishing another employee and bending to lift an object, Moseley heard a pop in his right ear. He immediately lost the hearing in that ear and began to experience roaring tinnitus [1] and vertigo. An examination revealed that Moseley was suffering from a fistula in the cochlea.[2] Dr. James Motes performed inner ear surgery on November 3 to close the fistula. Although Moseley's hearing improved to a degree after the surgery, the tinnitus and vertigo continued. In April 1990, Moseley was referred to Dr. Claude McLelland, an ear, nose, and throat specialist.

Dr. McLelland found the initial surgery to patch the fistula was not successful and that fluid was leaking into the middle ear. On June 14, 1990, Dr. McLelland performed a second surgery inserting an endolpymphatic shunt to drain the fluid from the inner ear. Within a month after the surgery, Moseley was again complaining of tinnitus, headaches, lethargy, and increased vertigo. Medications were not successful in alleviating these symptoms, and a third surgery was performed in October 1990 to sever the right vestibular, or balance nerve, which is located on the brain stem. Dr. Marco Eugenio, a neurosurgeon, assisted Dr. McLelland with this surgery.

Dr. McLelland's medical records indicate outstanding results from the surgery as of November 7, 1990. On November 12, Aetna claims representative Michael Gutierrez re-

---

1. A person suffering from tinnitus experiences a sensation of ringing or roaring in the ears. Moseley described the sensation as that of a jet plane about to take off.

2. An open sore in the inner ear.

ceived a letter from Dr. McLelland stating that Moseley had a gratifying result from the surgery and that "he should be able to resume nearly full activity in the near future." The letter also placed Moseley's hearing handicap at 3.13%. As a result of this letter, Aetna calculated that Moseley was entitled to a lump sum payment for the specific injury of hearing loss. Aetna sent Moseley a letter informing him that he was entitled to a lump sum payment of $1,013 and lifelong medical benefits. Moseley did not believe the lump sum payment was sufficient for the three surgeries he had endured and their effects, but he did not want to relinquish the lifelong medical benefits. He spoke with Gutierrez and asked if there was an alternative to the lump sum payment. After a discussion with Ross Dunn, Jr., an Aetna claims supervisor, Moseley signed a CSA on December 3, 1990, for $4,000 and twenty years of medical benefits. The CSA was approved by the Industrial Accident Board in January 1991.

On November 18, 1991, Moseley returned to Dr. McLelland's office complaining of visual disturbances and dizziness. Moseley was referred to Dr. Juan Bahamon for neurological testing. Moseley complained to Dr. Bahamon that he had periods of disorientation, chronic tinnitus, chronic headaches, chronic light-headedness, and the irresistible desire to walk in circles. He also complained of poor concentration, memory loss, low stamina, irritability, aggressiveness, depression and mood swings. The tests failed to reveal an objective basis for Moseley's complaints. Dr. Bahamon referred Moseley to Dr. Philip Gasquoine for psychological testing in September 1992. These tests confirmed Moseley's complaints of memory loss, low stamina, poor concentration, hostility, and depression. Dr. Gasquoine began psychotherapy designed to help Moseley accept that his symptoms are permanent and to provide coping techniques.

In January 1993, Moseley commenced this lawsuit to set aside the CSA. After a bench trial, the trial court found that: (1) Aetna's representatives, and the doctors they relied on, had misrepresented the extent of Moseley's injuries, (2) Moseley had relied on the misrepresentations when he signed the CSA,

and (3) Moseley had a meritorious claim for additional benefits. Based on these and other findings, the trial court concluded the CSA should be set aside and the case remanded to the Industrial Accident Board. Aetna appeals from these findings and conclusions.

By its first twelve points of error, Aetna complains the evidence is legally and factually insufficient to support certain findings of fact made by the trial court.

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991); *Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm Dev., Inc.*, 915 S.W.2d 61, 70 (Tex.App.—Corpus Christi 1996, writ denied). We review a trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards that we apply when we review the sufficiency of the evidence supporting a jury's finding. *Anderson*, 806 S.W.2d at 794; *Taiwan Shrimp Farm*, 915 S.W.2d at 70.

When we review a "no evidence" or legal sufficiency of the evidence point of error, we consider only the evidence and reasonable inferences that tend to support the jury's finding, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys. Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987).

When we review an "insufficient evidence" or factual sufficiency of the evidence point of error, we consider, weigh, and examine all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only when we find that the evidence, standing alone, is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

▇ To set aside a compromise agreement, a worker must show that misrepresentations concerning the injuries were made by the employer or compensation carrier; that the worker relied on those misrepresentations in making the settlement; and that there was a meritorious claim for more compensation than had been paid. *Rodriguez v. American Home Assurance Co.*, 735 S.W.2d 241, 242 (Tex.1987); *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 468 (1949). A physician can become an agent of a compensation carrier if the doctor's reports are relied on by the carrier in reaching a settlement. *Rodriguez*, 735 S.W.2d at 242. The worker does not have to prove that the employer, compensation carrier, or the doctor knew the statements about the severity of the injury were false at the time they were made. *Graves v. Hartford Accident & Indem. Co.*, 138 Tex. 589, 161 S.W.2d 464, 467 (1942). Absence of bad faith does not negate the claimant's cause of action. *Yarbrough v. Texas Employers' Ins. Ass'n*, 591 S.W.2d 556, 558 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.); *Texas Employers' Ins. Ass'n v. Maynard*, 362 S.W.2d 128, 131 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.).

The record reflects that Moseley experienced brief relief from some symptoms immediately following the surgery performed by Dr. McLelland in October 1990. The doctor believed the symptoms would continue to improve with time. According to Moseley's uncontroverted testimony, Dr. McLelland stated that recovery could take six weeks to six months. Dr. McLelland did not tell Moseley at any time that the symptoms were permanent. Moseley began a new job soon after the surgery. He told his new employers of the surgery, and that he would recover within a short time. When his condition did not improve as expected and his symptoms continued to occur on a daily basis, Moseley became anxious about losing his job and began to experience a great deal of stress at home.

In a letter to Aetna representatives, dated November 12, 1990, Dr. McLelland reported outstanding results from the surgery and predicted nearly full recovery within a few months. According to Dunn, Aetna relied on this information as well as all other available doctor's reports when Moseley's benefits were calculated. Dunn shared the information from Dr. McLelland's letter with Moseley on December 3, 1990, when they discussed the benefits to which Moseley was entitled. There is no dispute that Moseley relied on information regarding his prognosis as provided by Dunn and Dr. McLelland. Believing he would be better within a short period of time, Moseley agreed to the CSA on December 3 without realizing the symptoms he continued to experience were permanent. Only after being treated by Dr. Gasquoine in 1992 did Moseley realize the permanence of his condition.

Dunn testified that with a CSA, Moseley would be paid his lost wage earning capacity multiplied by up to a statutory maximum of 401 weeks for his disability. Moseley's weekly earnings were between $238 and $250. According to worker's compensation guidelines followed by Aetna, however, Moseley's lost wage earning capacity was determined to be $20 per week. Moseley received $4,000 as a result of the CSA. It appears that Moseley was only paid for 200 weeks.

▇ Although the record reflects Moseley was experiencing his symptoms at the time he signed the CSA, that he was working at a higher paying job, and that neurologists had been unable to discover an objective cause for the symptoms, we find no error in the trial court's findings. We hold the above evidence is legally and factually sufficient to support the following contested findings of fact:

9. Moseley was told by Bud Dunn, the representative of Aetna Casualty and Surety Company, that his condition would quickly improve and his surgeries had been a success.

12. Dr. McClelland's [sic] reports on which Moseley and Aetna representatives relied indicated recovery within a few months.

16. Before signing a Compromise Settlement Agreement, Moseley was advised by Bud Dunn that he could only receive limited benefits as a result of his injury.

The evidence and these findings, when combined with other uncontested findings of fact, support the trial court's legal conclusions that:

5. Moseley suffers to the present day with significant physical and emotional problems related to his work-related injury sustained in the course of his employment.

6. Dunn's statements to Moseley regarding the benefits to which he was entitled under Texas law were inaccurate and constituted a misrepresentation.

7. McClelland's [sic] statements regarding Moseley's recovery from his surgeries and the condition in which he would be within a few months after the Compromise Settlement Agreement was signed were inaccurate and constituted a misrepresentation.

8. Moseley relied on the inaccurate statements of Dr. McClelland [sic] and the representatives of Aetna in making the decision to settle his case.

11. The actions of agents of Aetna Casualty & Surety Company were the proximate cause of the signing of the Compromise Settlement Agreement.

12. The Compromise Settlement Agreement should be set aside because James Moseley relied on inaccurate statements of the "agents" of Aetna Casualty and Surety Company, including Bud Dunn, Michael Gutierrez, & Dr. McClelland [sic].

13. James Moseley has established a meritorious claim to greater compensation than that paid pursuant to the terms of the Compromise Settlement Agreement.

Because the trial court made supported conclusions for each of the elements necessary to set aside the CSA, we overrule Aetna's first twelve points of error.

By its thirteenth and fourteenth points of error, Aetna contends the trial court erred by finding and concluding that Moseley did not have to return the $4000 settlement in order to rescind the CSA.

■ Texas Supreme Court decisions indicate that Moseley need not return the benefits to pursue a claim for rescission of a compromise settlement agreement. *See Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 617 (Tex.1996); *Texas Employers Ins. Ass'n v. Kennedy,* 135 Tex. 486, 143 S.W.2d 583, 585 (1940). Moseley's obligation to prove a meritorious claim for *additional* compensation negated any duty to tender back the benefits already received. *See Saenz,* 925 S.W.2d at 617; *Kennedy,* 143 S.W.2d at 585. If Moseley is successful before the Industrial Accident Board, Aetna will be entitled to receive credit for the amount paid against any future award. *See Saenz,* 925 S.W.2d at 617; *Kennedy,* 143 S.W.2d at 585. We overrule Aetna's thirteenth and fourteenth points of error.

We affirm the trial court's judgment setting aside the compromise settlement agreement.