### GIBSON v. EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED.

No. 5413.

Court of Civil Appeals of Texas. Texarkana.

June 27, 1939.

Rehearing Denied July 6, 1939.

**328**

Wm. V. Brown, of Texarkana, for plaintiff in error.

R. T. Bailey, of Dallas, and Otto Atchley, of Texarkana, for defendant in error.

WILLIAMS, Justice.

Floyd Gibson, plaintiff below, and the Employers' Liability Assurance Corporation, Limited, the insurance carrier and defendant below, entered into a compromise settlement agreement of his claim for compensation for injuries he sustained during the course of his employment with the Southern Ice & Utilities Company, the insured. Under this agreement Gibson received from defendant $361 in full settlement of his claim, in addition to weekly benefits amounting to $252 previously paid him.

Plaintiff pleaded all the necessary allegations in this, an original suit, to support a recovery for compensation under the Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., but in his prayer sought only to set aside and hold for naught the above settlement agreement on grounds of alleged fraud and fraudulent representations; and the suit thus narrows itself down to a common-law action for the rescission and cancellation of a contract on the grounds alleged. Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081, 89 S.W.2d 1116; Wood v. Traders' & General Ins. Co., Tex.Civ.App., 82 S.W.2d 421.

Plaintiff alleged (and introduced in evidence) the settlement agreement had been made, and for grounds to set same aside pleaded: "That at the time of the settlement of said claim and the execution of said agreement that he was under the care and treatment of Dr. S. A. Collom, Jr., and Dr. Perry Priest, who were the physicians of the defendant and were the physicians designated by the defendant for treating this plaintiff; that he was caused to execute said agreement through the fraudulent representations and inducements by the said Dr. Collom and Dr. Priest in this: —That at the time the said compromise settlement was offered to plaintiff that he discussed the same with said doctors who advised him to make said settlement; who told him he would be soon over his present condition, would be able to do light work and that he was suffering from no broken bones and no permanent injuries; that believing the representations made to him to be true, relying upon them, and acting in good faith, made this settlement."

Plaintiff further alleged that said representations were false; that instead of improving he has grown worse; that he was then and is now suffering from a fracture of the left transverse process of the first lumbar; of which condition of himself he learned for the first time in December, 1935; that these injuries have caused him to suffer a temporary total disability of 49 weeks and a 75% partial permanent disability of 252 weeks at a weekly compensation wage scale of $12.60; all of which he was entitled to at the time the settlement was executed. Plaintiff alleged the sums theretofore paid him had been spent and offered to give credit for same on any judgment recovered by him.

Defendant entered general demurrer and general denial, and further pleaded an estoppel, in that plaintiff had taken a nonsuit in the United States District Court of the Eastern District of Texas, after the case had there been developed and before a verdict had been returned.

Plaintiff did not offer any testimony that Dr. Priest made any representations to him, or that he acted upon any statement made to him by Dr. Priest. Plaintiff did introduce evidence in support of his allegations in regard to alleged fraudulent representations made by Dr. Collom and

in support of his other allegations. Defendant did not offer any evidence. When plaintiff rested his case the court granted defendant's motion for an instructed verdict in its favor.

From the pleadings quoted, plaintiff asserts that Dr. Collom misled him by reasons of the misrepresentations. It is apparent that plaintiff seeks to charge defendant with this act of Dr. Collom as it is alleged that this physician was defendant's employee and had been employed to treat plaintiff; that is, an agent of defendant. The disposition of this appeal turns upon whether Dr. Collom was the agent of the defendant at the time. In passing upon this allegation of agency we shall assume that the representations made to plaintiff by Dr. Collom were untrue and material; that plaintiff believed them to be true, and he acted upon same. .

On the date of the accident, February 8, 1935, plaintiff was carried to Dr. Beck who treated him from the beginning. According to plaintiff's testimony, he was sent to Dr. Collom on March 15th and from this latter date up to about the time of the settlement both physicians treated him. Dr. Priest, a nerve specialist, associated in the office with Dr. Collom, made one examination of plaintiff. The record is silent as to who employed Dr. Priest, if in fact he was employed by any one. Dr. Beck was not associated with these physicians in the practice of medicine. Plaintiff engaged the medical services of Dr. Collom in the confinement of his wife in the latter part of July, 1935. There is attached to the settlement agreement a statement of plaintiff's physical condition from Dr. Collom dated July 22, 1935, addressed to the Southern Ice & Utilities Company, accompanied by a detailed report of Dr. Priest's examination. The settlement agreement is dated July 30th, later approved by the Industrial Accident Board. The only evidence offered which deals with the employment of Dr. Collom was testified to by plaintiff as follows:

"Q. How long did you go to Dr. Beck? A. At least four weeks.

"Q. Then what did you do? A. During that time, at the end of the 5th week, Mr. Allen and Mr. Mahan sent me to Dr. Collom.

"Q. Who were Mr. Allen and Mr. Mahan and what position do they hold for Southern Ice & Utilities Company, the people you work for? A. Mr. Allen was the manager, and Mr. Mahan was Sup't of Sales Department.

"Q. You say that Mr. Allen and Mr. Mahan were the ones who told you to go to Dr. Collom? A. Yes, sir."

This testimony of plaintiff does not assert that the defendant employed this physician or authorized or ratified the employment of him to treat plaintiff. No evidence was offered that Dr. Collom had ever been in the employ of defendant. Plaintiff, when asked if the $361 paid his doctor and medical bills, answered: "I suppose so, I didn't pay them."

When plaintiff visited the office of the ice company to ascertain why the weekly payments of compensation were discontinued, Mr. Allen, the manager, directed plaintiff to inquire of a Mr. Collins, the adjuster for defendant. The evidence does not disclose when or where plaintiff contracted the adjuster. The adjuster informed plaintiff that the company was not going to make any further payments unless they could pay it all in a lump sum and "get it over with." Upon plaintiff's being offered $300 in settlement he went to see Dr. Collom and asked the physician what he thought of the offer. Plaintiff then detailed the representations made to him by Dr. Collom, not necessary here to detail, but being substantially as set forth in his pleadings. Later that day, or a few days later, the evidence not being definite as to the time, the adjuster and plaintiff settled for $361 so as to include a $61 account which plaintiff owed the ice company.

It is not contended that plaintiff consulted Dr. Collom in regard to this settlement at the suggestion of the adjuster or any other person purporting to represent the defendant, or that the adjuster knew plaintiff was going to consult Dr. Collom in regard to the settlement. Plaintiff's testimony in this respect was: "Mr. Collins brought up the question of settlement. Well, I think he told me he would give me $300. I didn't say any more to him but went on to Dr. Collom." The foregoing is all and the only evidence offered which in any way relates to Dr. Collom's connection with the settlement.

▆▆▆ The burden of proof was upon plaintiff to prove this agency of Dr. Collom and that he acted within the scope or apparent scope of his employment. This

evidence detailed will not support such a finding. It is not alleged or contended in the evidence that defendant used this physician to deceive plaintiff as to his condition in order that an advantageous settlement might be made, or that the adjuster and physician acted together in procuring the settlement, or that the adjuster in making the settlement knew that plaintiff had consulted and been advised by the physician. And thus plaintiff failed to make a case which would vitiate the compromise settlement agreement he sought to set aside. Gulf, C. & S. F. R. Co. v. Huyett, 99 Tex. 630, 92 S.W. 454, 5 L.R.A.,N.S., 669; 36 Tex.Jur. 813; Colorado Springs & Interurban R. Co. v. Huntling, 66 Colo. 515, 181 P. 129; Pahl v. Tri-City R. Co., 190 Iowa 1364, 181 N.W. 670; Chicago, R. I. & G. R. Co. v. Taylor, Tex.Civ.App., 203 S.W. 90.

We do not deem it necessary to discuss the question of estoppel. For the reasons stated, the judgment of the trial court is affirmed.