**658**

TRADERS & GENERAL INSURANCE
COMPANY, Appellant,

v.

Willie **WRIGHT**, Jr., Appellee.

No. 7024.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 13, 1969.

Rehearing Denied March 3, 1969.

Mehaffy, Weber, Keith & Gonsolin, Beaumont, for appellant.

Barnes & Barnes, Beaumont, for appellee.

STEPHENSON, Justice.

This is an appeal from an order overruling defendant's plea of privilege. Trial was before the court, and no findings of fact nor conclusions of law were requested or filed. The parties will be referred to here as they were in the trial court.

Plaintiff (Wright) brought this action to set aside a compromise settlement made in a compensation case. Defendant (Traders and General Insurance Company) was the insurer. The sole point of error is that the trial court erred in overruling its plea of privilege because plaintiff did not establish a cause of action. Plaintiff relied upon Subdivisions 7 and 23 of Article 1995, Vernon's Ann.Civ.St., in order to maintain venue in Jasper County, where this suit was filed. The only question in this case is whether the state of facts testified to by the witnesses constituted legal fraud as recognized by the law of this State.

Plaintiff testified to the following: That on the date of this injury, March 21, 1967, he was employed by the Kirbyville Auction Barn operated by Dick and Robert Muckelroy. On the day of the injury, they were engaged in weighing some steers, and plaintiff was injured when one of them

whirled back on him, knocked him loose from the side of the chute, and broke his ankle. That plaintiff got a lick on the back of his head and was knocked out for a little period of time. That a big man who bought cattle was in the ring, came in and picked him up, and brought him out. Mr. Muckelroy told plaintiff to go to Dr. Moore, the company doctor. Dr. Moore x-rayed his ankle and put it in a cast. Plaintiff wore the cast for six weeks and Dr. Moore took it off. Mr. Kettering, the insurance adjuster, told plaintiff that Dr. Moore had released him and said that plaintiff was able to go back to work. The next day, even though plaintiff could hardly walk, he helped Muckelroy try to pen some cows. He had done no other work since then. The defendant paid plaintiff some weekly compensation before the doctor released him, and then gave him $450.00 as a compromise settlement. The settlement agreement was signed on May 24, 1967, in Jasper. When Kettering told plaintiff Dr. Moore said he was all right and could go back to work, plaintiff believed it was the truth. That plaintiff was persuaded by that statement to sign a release. That he would not have signed the release if it hadn't been for those statements. After the release was signed, plaintiff began to have headaches and they kept getting worse. Plaintiff then called Dr. Moore, who came by the house and gave him a shot, and his sister took him to Beaumont and they put him in the hospital. Dr. Koch saw plaintiff in the hospital and sent him to a group of neurology specialists. Two operations were performed on his head, by opening his skull, before he began to get better. He is still under the care of the neurosurgeon in Beaumont and is beginning to get headaches again. The total of plaintiff's medical bill at the time of the hearing was $3,143.00.

On cross-examination, plaintiff gave the following testimony: He is 61 years of age. He did not know there was anything wrong with his head at the time he accepted the $450.00 and made the settlement with de-

fendant. Plaintiff did not tell Dr. Moore that he got his head banged, and none of plaintiff's employees, nor anybody with the insurance company, knew plaintiff got his head banged or got knocked out. Dr. Moore did not tell plaintiff that there was anything wrong with his head, or anything about his head.

The compromise settlement agreement was admitted in evidence and contained the following statement:

"I claim that I sustained a broken left ankle while I was working in the Auction barn for J. M. Muckelroy and the Kirbyville Auction Barn."

\* \* \* \* \* \*

"I hereby requested that the Industrial Accident Board approve this lump sum settlement, and I understand that this is a full settlement for injury to my left ankle."

It is contended by defendant that the facts of this case do not bring it within the doctrine of "legal fraud" recognized in this State, because the uncontroverted evidence shows that neither the doctor employed by defendant, nor the insurance adjuster, had any knowledge that plaintiff was having any trouble with his head, or that plaintiff was knocked unconscious on the occasion in question. The leading case on "legal fraud" in Texas is Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464 (1942). In the Graves case, the doctor employed by the insurance company told plaintiff that his back injury was not serious, but only a minor strain. The jury found in the trial to set aside the compromise settlement agreement because of fraud; that the injury was a serious one, and that the statement made by the doctor was false; that plaintiff relied upon the false statement and was induced thereby to compromise his claim. The Commission of Appeals held this was suffcient to constitute legal fraud, and it was not essential to plaintiff's cause of action that he es-

tablish knowledge on the part of the insurance company that the injury was a serious one.

Defendant argues: The present case must be distinguished from the Graves case, supra, because it was the extent of the injury in the Graves case which was in question, and the doctor's misrepresentation, whether intentional or not, was to a known injury. That in the present case there could be no misrepresentation as to the head because the doctor and insurance adjuster knew nothing about a head injury.

The misrepresentation relied upon by plaintiff in the present case is that the doctor said that the plaintiff was all right and could go back to work. The implied finding by the trial court is that plaintiff was not all right and could not go back to work.

We have not been cited, nor have we found, a Texas case passing directly upon the point of error before us. In the present case, there is no evidence that plaintiff or defendant knew, at the time the compromise agreement was made, that plaintiff had suffered an injury to his head. Plaintiff testified he got a blow to his head and was knocked out for a little period of time, but did not begin to have headaches until after the compromise settlement was made. There is no evidence that plaintiff was suffering any incapacity from his head injury at the time of the settlement.

We have concluded that, inasmuch as the law in this State does not require a culpable state of mind on the part of the doctor making representations which are relied upon by the claimant, there is no more reason to refuse to set aside a compromise settlement under the facts of this case, than one in which the doctor is mistaken as to the extent of a known injury. The doctor having represented to plaintiff, through the insurance adjuster, that plaintiff was all right and could go back to work,

misrepresented the actual facts, and plaintiff did prove a cause of action.

Paraphrasing the statement found in Continental Casualty Co. v. Lynch, 257 S.W.2d 778 (Tex.Civ.App.1953), plaintiff had the right to believe the doctor knew the nature and extent of his injury, and whether plaintiff was all right, and could go back to work.

Judgment affirmed.

KEITH, J., not sitting.