**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Paul WILLIAMS, Appellee.**

**No. 273.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Sept. 24, 1969.

Rehearing Denied Oct. 22, 1969.

19. Barrett, 'Delinquent Child': A Legal Term Without Meaning, 21 Baylor L.Rev. 352, 354–355 (1969).

Rufus Wallingford, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellant.

Stevens F. Mafrige, Houston, for appellee.

BARRON, Justice.

This is an appeal by Texas Employers' Insurance Association from an order of the trial court overruling appellant's plea of privilege to be sued in the county of its residence, Dallas County. Suit was brought against appellant by Paul Williams to set aside a compromise settlement agreement entered into between appellee and appellant regarding a workmen's compensation claim. Appellant timely filed its plea of privilege, which was controverted by appellee who alleged that venue was sustainable in Harris County, Texas, under Subdivisions 7 and 23 of Article 1995, Vernon's Ann.Civ.St. After a hearing the trial court overruled appellant's plea of privilege.

Appellant contends that the trial court erred in sustaining venue in Harris County, because there was no evidence that any false representation was made to appellee by appellant or any of appellant's authorized agents, and because as a matter of law appellant is not a private corporation, association, or joint stock company subject to the provisions of subdivision 23 of Article 1995.

On September 15, 1961, the appellee sustained an injury to his back while on the job. Shortly after the injury, he was treated separately by Drs. Wilson, Ashkenazy, Burdeaux, and a chiropractor whose name is not mentioned. Appellee was told by Travis Hinds, an adjuster for Texas Employers' Insurance Association, that if he continued to see Dr. Ashkenazy, the insurance carrier would drop his case. On February 23, 1962, appellee was referred by appellant to Dr. Joe W. King for treatment. Dr. King examined appellee and prepared a medical report dated February 23, 1962, setting forth appellee's history, the results of Dr. King's physical examination and X-rays, and his diagnosis. The medical report is addressed to appellant for the attention of Mr. Hinds, and the report shows that appellee was referred to Dr. King by Mr. Hinds. Dr. King diagnosed that appellee had a ruptured intervertebral disc at the L-4, L-5 level, left. This diagnosis was confirmed by Dr. Robertson, a consultant called in by Dr. King. The diagnosis was further bolstered by the results of an electromyographic test. Dr. King's report further shows that appellee would probably require surgery to alleviate appellee's problem, and this observation was passed on to appellee. On February 25, 1962, appellee was hospitalized in Methodist Hospital for the purpose of having myelographic and electromyographic studies made. According to appellee's testimony, Dr. King told him, while he was in the hospital, that his injury was a recurrence of an old back injury. Mr. Williams had been operated on in 1955 by Dr. Boylston, an associate of Dr. King, and had obtained good relief therefrom. A lumbar laminectomy was preformed at that time.

In corroboration of appellee's testimony that Dr. King told him that his injury was a recurrence of the old injury, the medical report of February 23, 1962 refers to the fact "that the previous laminectory was done at the L-4 L-5 level. I would think at this examination that the nerve root irritation, which he now has, is at the same level. However, there is a possibility that it is at the level above." There is evidence to show that the 1955 operation was at L-5, S-1, left. Dr. King testified that he discovered that the old operation was at the L-5, S-1, left level, and not at the L-4, L-5 interspace. He did not know the time of his discovery. However, he explored both levels at the time of surgery. The operation was performed on March 12, 1962. Exploration of L-4, L-5 and L-5, S-1 interspaces was made, with removal of degenerated disc material, and adhesolysis and foraminotomy of the L-5 nerve root on the left, between L-4 and L-5 as shown by the doctor's testimony and the records.

While appellee was in the hospital, two adjusters for appellant entered the room and attempted to settle the claim with Mr. Williams, but no settlement was made at that time. The date of settlement was March 3, 1962, approximately two days after the adjusters had tried to settle while appellee was in the hospital. Appellee was paid $2,775 in settlement of his claim, and the settlement was to include the cost of Dr. King's operation, which was performed on March 12, 1962. Appellee did not do well after the operation, and sometime later, Dr. Ashkenazy performed another operation on appellee's back.

Mr. Williams was not sent to Dr. King against his will. Appellee testified that he did not know who called on him during the settlement procedure, but that they did not try to tell him what was wrong with him, and they apparently made no representations to him whatsoever relative to his physical condition. Appellee testified that he relied strictly on the statements made to him by Dr. King concerning the recurrence of the old injury. Dr. King testified that he was not on anybody's payroll and was not retained generally by anyone. Nobody from Texas Employers' Insurance Association ever contacted Dr. King or called for a report. He saw appellee as a compensation patient and made two reports to appel-

lant dated February 23, 1962 and March 14, 1962. Appellant paid Dr. King's bill in the amount of $65.00 for the examination, the reports and hospital visits. Dr. King stated that he advises all patients not to settle a claim on the basis of his findings, but that he tries to advise a patient of the nature of his injury.

In order to sustain venue under Subdivision 7 of Article 1995, a plaintiff must establish all of the constituent elements of fraud. North America Life Ins. Co. v. Wilburn, 392 S.W.2d 364 (Tex. Civ.App.), no writ hist.; 63 Tex.Jur.2d, Sec. 210, p. 138. One of the basic elements of fraud in general, and in a suit to set aside a compensation settlement in particular, is a showing that a false or misleading representation was made by a defendant or one of its duly authorized agents. Brannon v. Pacific Employers Ins. Co., 148 Tex. 289, 224 S.W.2d 466; Bullock v. Texas Employers Ins. Ass'n, 254 S.W.2d 554 (Tex. Civ.App.), writ ref.

There is nothing in the record which would indicate, directly or by inference, that anyone other than Dr. King ever communicated with appellee concerning the nature of appellee's injuries. There is likewise nothing in the record that would indicate that any of appellant's adjusters even knew of the conference that Dr. King had had with appellee or of the contents of the conversation. The present case is, therefore, distinguished from those cases where the physician's misrepresentations are communicated to the claimant through an agent or adjuster or are used by the adjuster in making the settlement. Illustrative of such cases are: Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464 (Tex.Com.App.); Texas Employers' Ins. Ass'n v. Maynard, 362 S.W. 2d 128 (Tex.Civ.App.), writ ref., n. r. e.; Vineyard v. Texas Employers' Ins. Ass'n, 263 S.W.2d 675 (Tex.Civ.App.), writ ref., n. r. e.; Texas Employers' Ins. Ass'n v. Kelly, 261 S.W.2d 480 (Tex.Civ.App.), no writ hist.; Employers Mutual Liability Ins. Co. v. Strother, 358 S.W.2d 753 (Tex.Civ.

App.), writ ref., n. r. e.; O'Quinn v. Texas Employers' Ins. Ass'n., 219 S.W.2d 119 (Tex.Civ.App.), writ ref., n. r. e.; Traders & General Insurance Company v. Wright, 437 S.W.2d 658 (Tex.Civ.App.), no writ hist.

Thus, the controlling issue boils down to whether Dr. King was appellant's agent at the time he made the alleged misrepresentation. Dr. King testified that he is an orthopedic surgeon in the practice of medicine. He is chief of staff at Methodist Hospital in Houston. He is also chief of orthopedic surgery at Ben Taub and Veterans Administration Hospitals in Houston. He was not on the payroll of anyone at any time pertinent hereto and was not on anybody's retainer, and he testified that he did not know who would be responsible for appellee's bill, but he assumed that if this were a compensation case, the carrier involved would pay for his services. He further testified that he treated appellee exactly as he would any other patient, that he did not participate in the settlement, and that he was never contacted by appellant concerning his treatment or the handling of the case in any respect. There is no evidence that would indicate that Dr. King was the "company doctor" for appellee's employer or was regularly engaged by appellant. Moreover, appellee either went or was sent to three other doctors and a chiropractor before he was seen by Dr. King concerning the injuries.

The burden of proof was upon appellee claimant to prove this agency of Dr. King and that he acted within the scope or apparent scope of his employment. We do not believe the appellee has met such burden. There is no evidence in the record to show that Dr. King's alleged mistake or misrepresentation was used by the adjusters in effecting the settlement, that such was ever mentioned to appellee, that the particular agent or agents knew of the report of February 23, 1962, or even who the adjusters were. Dr. King was not used by appellant or any of its agents to deceive

**236**

Mr. Williams as to his physical condition, and clearly there is no evidence that Dr. King acted with any adjuster in procuring the settlement. The record shows no persuasion on the part of any agent for appellant, and no false representations whatsoever were made to appellee at the time of settlement. The sum of $2,775 was offered to Mr. Williams, and such offer was accepted by him. See Gibson v. Employers' Liability Assurance Corp., 131 S.W.2d 327, 329–330 (Tex.Civ.App.), writ ref. And see McKelvy v. Barber, 381 S.W.2d 59, 63 (Tex. Sup.), where a different state of facts existed, but where the general rule applicable here is stated.

The appellee, Williams, pleaded subdivision 23 of Article 1995 in addition to the above ground to sustain venue in Harris County. He alleges that this suit is against a private corporation, association, or joint stock company, which maintains an agency in Harris County, and that plaintiff-appellee was a resident of such county at the time the present cause of action or part thereof arose.

■ The cases are unanimous that the appellant, Texas Employers' Insurance Association, is not such an entity as will subject it to the venue provisions of subdivision 23. Appellant has been held not to be a "private" corporation or association. Texas Employers' Ins. Ass'n v. Collier, 77 S.W.2d 878 (Tex.Civ.App.), no writ hist.; Milstead v. Texas Employers' Ins. Ass'n, 308 S.W.2d 84 (Tex.Civ.App.), no writ hist. See also Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556; Southwestern Indemnity Co. v. Texas Employers' Ins. Ass'n, 310 S.W.2d 399 (Tex. Civ.App.), no writ hist. We are powerless to change the rule, and we sustain appellant's contention.

For the reasons above stated, we reverse the judgment of the trial court and order this cause transferred to a District Court of Dallas County, Texas.