**HOME INSURANCE COMPANY,**
**Appellant,**

v.

**Jack H. DICKEY, Appellee.**

**No. 8719.**

Court of Civil Appeals of Texas,
Amarillo.

May 23, 1977.
Rehearing Denied June 20, 1977.

Crenshaw, Dupree & Milam (Cecil Kuhne), Lubbock, for appellant.

Stovall & Stovall (Van C. Stovall), Plainview, for appellee.

ELLIS, Chief Justice.

Venue in this suit to set aside a compromise settlement of a workmen's compensation claim was sustained in Hale County pursuant to Tex.Rev.Civ.Stat.Ann. art. 1995, subd. 7 (fraud). In its appeal from the trial court's judgment overruling its plea of privilege, the defendant, Home Insurance Company, the insurer, contends that the plaintiff, Jack H. Dickey, did not establish venue under subdivision 7 because of his failure to prove that any false representations were made to him and that any such representations were attributable to the defendant. We find that under the pleadings and evidence venue is sustainable in the county in which the suit was brought. Affirmed.

Plaintiff Dickey was injured on February 21, 1974, while working for Lilie-Hoffmann Cooling Towers, Inc. in Plainview, Hale County, Texas. He apparently turned his

left ankle and fell while getting out of a truck. Dickey timely filed his claim for compensation, and Home Insurance Company, the employer's compensation carrier, was notified. Dickey visited Doctor Coe Branch of Plainview, who treated him for a sprained left ankle. Dickey selected Doctor Branch from a list of three doctors posted on the bulletin board at his employer's offices. Doctor Branch saw Dickey twice and certified him to return to work on May 8, 1974. Branch sent reports of each of Dickey's visits to the insurer's claims adjuster, G. C. Shaffer. Branch's final report, prepared on May 20, 1974, stated that Dickey would have a 10–15% permanent disability in his left ankle. After receiving Branch's report, Shaffer proposed a settlement to Dickey. In his letter, Shaffer repeated Branch's report of 10–15% ankle disability, informed Dickey that he was entitled to a recovery of $1,144.52, and offered to settle for $1,250.00 plus one year's medical coverage. Dickey accepted the offer and on July 24, 1974, the parties executed a compromise settlement agreement. Between the time of the February sprain and fall and the time the agreement was executed, Dickey experienced no further falls or injuries. About a week after the agreement was executed, however, Dickey was experiencing severe pain and visited Dr. James Campbell, one of Doctor Branch's associates. Dickey continued to see Doctor Campbell who eventually discovered a break in Dickey's left femur. Campbell reported his discovery to Shaffer and stated that the fracture was related to Dickey's fall of February 21, 1974. Campbell referred Dickey to Dr. Norbert Bublis, an orthopedic surgeon, who operated on Dickey's hip in August, 1974. Bublis released Dickey from his care in January, 1975, and in his written report to Dickey's employer, he stated that Dickey had a 40% permanent disability in his lower extremity.

In November of 1975, Dickey instituted this suit in Hale County to set aside the compromise settlement agreement, alleging actionable fraud against the insurance company. The insurer interposed its plea of privilege to be sued in Dallas County and Dickey controverted the plea on the basis of Tex.Rev.Civ.Stat.Ann. art. 1995, subd. 7, which provides that "In all cases of fraud, . . . suit may be brought in the county where the fraud was committed or . . where the defendant has his domicile." The trial court overruled the plea of privilege. No findings of fact or conclusions of law were requested and none made. By 6 points of error the insurer contends that venue is not sustainable under subdivision 7 and challenges the evidential support for Dickey's alleged cause of action for fraud.

■ Without findings of fact and conclusions of law, we must presume that the trial court found all essential facts in favor of Dickey and consistent with its order. *Jordan v. Rule,* 520 S.W.2d 463 (Tex.Civ.App.— Houston [1st Dist.] 1975, no writ). Thus, we must affirm the trial court if the evidence produced supports any lawful theory raised by the pleadings. *Loomis v. Sharp,* 519 S.W.2d 955 (Tex.Civ.App.—Texarkana 1975, writ dism'd).

■ One basic element of proof required to establish venue under subd. 7 is a false statement attributable to the defendant. *See e.g., Brooks v. Parr,* 507 S.W.2d 818 (Tex.Civ.App.—Amarillo 1974, no writ). In its fifth and sixth points of error, the insurer has argued that there is no evidence and insufficient evidence that any statements made to Dickey were false. In response, Dickey has argued that statements by Doctor Branch and adjuster Shaffer were false when made. In particular, Dickey has pointed to Branch's report that he had only a 10–15% disability in his ankle, Shaffer's repetition of Branch's report and Shaffer's statement that Dickey was entitled to a settlement of only $1,144.52. To support his contention that these statements were incorrect when made, Dickey introduced the report of Dr. James Campbell, which reads in part, as follows:

> So as to the question as to whether or not this fractured hip is related to the sprained left ankle the patient sustained in February, I would have to say that certainly this is indirectly related. It is

my opinion . . . that the most likely occurence (sic) of events was in February when he sprained his ankle. Because of the fall he could have suffered a stress defect in the left femur in the femoral neck area. This is not a true fracture, of course, but it is a cortical defect in the bone and because the compensatory limp that Mr. Dickey assumed after this sprain for the subsequent five or six months, it is thought that approximately two weeks prior to x-ray of the fractured hip on August 6, 1974, the patient could have sustained the break. Now, of course, he has not suffered any fall since February. He has not stated any sequence of events that would make you think that he suffered the fracture at anytime in the last month. So a gross description of events would be a small cortical stress defect was sustained of the left femur in the injury on February 25, 1974. This defect "gave way" finally after many months of limping and the femur fractured through and through.

According to the plaintiff's interpretation of the above quoted portion of the report, the February, 1974 fall produced a "cortical defect," in Dickey's left femur, and this defect was necessarily present when Doctor Branch and Shaffer made the representations to Dickey regarding the 10–15% injury to his ankle. The fracture above described resulted in a 40% disability. Thus, if Campbell's opinion expressed in his report was correct, the statements by Branch and Shaffer were incorrect when made. The insurer, however, has argued that Campbell's report constitutes no evidence that the statements of Branch and Shaffer were incorrect because the report was not cast in terms of medical probabilities.

■ It is recognized that there is a statement in the report that the February fall "could have" produced the cortical defect. If the entire report established only a possibility of causation, we would agree that the report constituted no evidence that the defect existed at the time the questionable statements were made. *See, e.g., Insurance Company of North America v. Myers,* 411 S.W.2d 710 (Tex.1966).

Doctors, however, sometimes use the term "could have" to mean "probably did." *Lord v. Insurance Company of North America,* 513 S.W.2d 96, 100 (Tex.Civ.App.—Dallas 1974, no writ). We believe this was the case with Campbell's report. Campbell stated that the hip fracture and the February ankle sprain were "certainly . . . indirectly related." In his opinion, the "most likely occurrence of events" was in February when Dickey could have suffered a stress defect in his left femur because of the fall. Finally, Campbell stated that "a gross description of events would be a small cortical stress defect was sustained of the left femur in the injury on February 25, 1974," and that this defect gave way after many months of limping. At that point, the femur fractured "through and through."

■ Thus, a reading of the complete report reveals that Campbell believed—not merely as a possibility—that the fall caused the cortical defect and eventually, the fracture. When full consideration is given to all statements in their entirety and in the context made, it is our opinion that the report sufficiently indicated the doctor's opinion as to the medical probability of the asserted relationship between the fall, the resultant cortical defect and the compensatory limp which eventually culminated in the fracture. *See Lord v. Insurance Company of North America, supra.* It is our opinion that the report, corroborated by Dickey's testimony that he had experienced no other fall or trauma during the time span in question, supports the trial court's implied finding that the statements by Shaffer and Branch were incorrect when they were made. Points 5 and 6 are overruled.

The insurer, however, has argued that these incorrect statements were not attributable to it and not a basis for a fraud cause of action. *See Brooks v. Parr, supra.* Points 1 and 2 test the legal and factual sufficiency of the evidence to support an implied finding that Branch was the agent of the insurance company. In points 3 and

4, the insurer has argued that Shaffer's statements were not actionable because Shaffer did not know they were false and did not act in bad faith.

It is undisputed, however, that Doctor Branch told Dickey he only had a sprained ankle and that Branch's report showed that he would only have a 10–15% disability in his left ankle. On the basis of this report, Shaffer informed Dickey that he had 10–15% disability and that he was entitled to only $1,144.52 in settlement of his claim. There is evidence that these representations were false when made, and that Dickey relied upon them when he agreed to settle.

■ We agree with the insurer that there is no evidence that Shaffer or Branch knew their representations to be false. It is not necessary, however, to prove such knowledge. *Graves v. Hartford Accident & Indemnity Co.,* 138 Tex. 589, 161 S.W.2d 464 (Tex.Com.App.1942, opinion adopted); *Traders & General Insurance Company v. Wright,* 437 S.W.2d 658 (Tex.Civ.App.— Beaumont 1969, no writ). Furthermore, absence of bad faith does not negate the plaintiff's cause of action. *Texas Employers' Insurance Association v. Maynard,* 362 S.W.2d 128 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.). In the light of the foregoing, points 3 and 4, which are predicated upon the assumption that knowledge of the incorrectness and lack of good faith on the part of the adjuster are necessary elements of actionable fraud, are overruled.

■ It has been established that if a doctor makes false statements to a compensation claimant, the statements are not attributable to the insurance company if the claimant chose the doctor by himself. *See Mullens v. Texas Employers' Insurance Ass'n,* 507 S.W.2d 317 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.); *Bullock v. Texas Employers' Ins. Ass'n,* 254 S.W.2d 554 (Tex. Civ.App.—Dallas 1952, writ ref'd); *Gibson v. Employers' Liability Assurance Corp.,* 131 S.W.2d 327 (Tex.Civ.App.—Texarkana 1939, writ ref'd). In contrast, if the claimant's employer or the insurance company chose the doctor, or the doctor was the agent of either, the insurance company will be charged with any false statements made by the doctor. *Graves v. Hartford Accident & Indemnity Co., supra; Traders & General Insurance Company v. Wright supra; Vineyard v. Texas Employers' Ins. Ass'n,* 263 S.W.2d 675 (Tex.Civ.App.—Dallas 1953), writ ref'd n.r.e.). In the case before us, however, Dickey has argued that the adjuster's use of the doctor's incorrect report can be the basis for a cause of action for fraud.

In this regard, it has been held that use of a false medical report by an insurer's claims agent in connection with a settlement was not actionable where the reporting doctor had been chosen by the claimant. *Bullock v. Texas Employers' Insurance Ass'n, supra.* On the other hand, it has been held that where the claimant was referred to the reporting doctor by his employer or the insurance company, or the doctor was the agent or employee of either, the use of an incorrect report and reliance thereon by the claimant can be the basis for a fraud action. *See Texas Employers' Insurance Ass'n v. Sprabery,* 507 S.W.2d 340 (Tex.Civ.App.—Fort Worth 1974, no writ); *Texas State Highway Department v. Kinsler,* 230 S.W.2d 364 (Tex.Civ.App.—Beaumont 1950, writ ref'd).

■ In the instant case, Dickey testified that he selected Doctor Branch from a list of three doctors whose names appeared on his employer's bulletin board and that he would not have chosen Branch but for the fact that his name was listed on the bulletin board in his employer's office. In this connection, Dickey stated that, although Doctor Branch had previously treated his wife, he had never met him. Further, the parties stipulated that Doctor Branch's testimony would be that he "was authorized by Home Insurance Company to examine and treat Jack Dickey, and in connection with the examination and treatment of Jack Dickey, the charges were sent to and paid by Home Insurance Company." The evidence further shows that on each occasion that Doctor Branch examined Dickey, he advised the patient of the sprain in his left ankle and sent a report to Shaffer, the adjuster for Home Insurance Company.

The insurer argues that the claimant's mere selection of Doctor Branch from names posted on his employer's bulletin board does not, under the circumstances of this case, constitute the doctor its agent. In making this argument, the insurer relies on *Mullens v. Texas Employers' Insurance Ass'n, supra,* in support of its position that authorization by the insurer for the claimant to see a particular doctor does not make the doctor an agent of the insurer, and on *Texas Employers' Insurance Association v. Williams,* 447 S.W.2d 232 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ) for authority that the fact that the carrier refers a claimant to a doctor for treatment, receives reports from the doctor, and pays the doctor's bill is not sufficient to constitute the doctor an agent of the insurer. These cases are distinguishable from, and are not dispositive of the significant issues in, the case at bar.

In neither *Mullens* nor *Williams* was there any showing that the insurer used the doctor's report in effecting settlement. Here, however, the insurer used Doctor Branch's report to inform Dickey of his percentage of disability and what amount that disability entitled him to receive in settlement of his claim. Settlement was effected on that basis. Under these circumstances where the insurer uses the doctor's report to bring about the settlement of the claim and accepts the benefits derived therefrom, the doctor becomes the insurer's agent insofar as his report is made the basis of settlement. *Jones v. Traders & General Ins. Co.,* 188 S.W.2d 739, 741–42 (Tex.Civ. App.—Eastland 1945, no writ). *Accord, Associated Employers Lloyds v. Aiken,* 201 S.W.2d 856, 860–61 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.).

In the light of the foregoing, it is our opinion that the evidence sufficiently supports the trial court's implied finding of agency. Accordingly, points 1 and 2 are overruled.

For the reasons above stated, it is our opinion that the evidence sufficiently supports the implied findings of the trial court that there were incorrect representations by Doctor Branch and Shaffer, although innocently made, concerning Dickey's condition prior to the time of the settlement and that such representations are attributable to the defendant. Thus, for venue purposes, the plaintiff has established the existence of a cause of action against the insurer in Hale County, Texas, and that venue is sustainable in such county pursuant to the provisions of subdivision 7.

The judgment of the trial court overruling the defendant's plea of privilege is affirmed.